UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEGALFORCE RAPC WORLDWIDE P.C.,

    Plaintiff,

  v.

MH SUB I, LLC,

    Defendant.

No. C 24-00669 WHA

**ORDER RE END-OF-CASE MOTIONS**

In this trademark action, this order decides the pending motions (1) to dismiss the action voluntarily, (2) to strike expert reports within that motion to dismiss, (3) to disqualify counsel from post-dismissal motions, and (4) to seal varied documents. Each is taken in turn.

    **1.**    **THE MOTION TO DISMISS VOLUNTARILY.**

Plaintiff moves to dismiss its own action and for each side to bear its costs and fees (Dkt. No. 193). Defendant, for its part, welcomes dismissal, but not on these terms (Dkt. No. 197). It denies plaintiff's view of the merits, and "intends to seek attorneys' fees, costs, non-taxable costs, and sanctions." Under Rule 41(a)(2), because defendant long ago answered the complaint, any dismissal over its objection shall be "only by court order, on terms that the court considers proper." Costs properly go to the prevailing party, absent specific reasons such as misconduct. *Subscription Telev., Inc. v. S. Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir. 1978). So, who prevails, and who pays?

*As to the merits*, plaintiff argues it would prevail on the merits if litigated to completion, and attaches over 500 pages of materials to show why. But plaintiff asks to dismiss its case now without defendants' agreement. So, of course it cannot be the prevailing party in any dismissal, which leads to the next point.

*As to costs*, plaintiff argues costs should be shared because defendant deserves blame for delays in revealing what made this case not worth litigating: its limited prospects for damages.

Plaintiff's briefing is not persuasive. Plaintiff urges that defendants' failure to produce a declaration until twice admonished by Special Master Harold McElhinny delayed plaintiff's appreciation for the money-losing character of this suit (Dkt. No. 198 at 3–4). But the docket shows that after receiving this purportedly critical declaration on February 6, 2025, plaintiff submitted *eight* more discovery-related filings *before* requesting dismissal. Those extra filings included a discovery letter-brief seeking an adverse inference *at trial* (Dkt. No. 172) — when it turned out the documents it thought were missing had been sitting in plaintiff's mailroom all along (Dkt. No. 190).

Nor was plaintiff's oral argument — and supplementary filing — persuasive. At our hearing, each side relied upon a critical item of evidence to argue that the other side was more at fault for not revealing any sooner that this case was not worth litigating. Interestingly, plaintiff newly asserted that the critical item of evidence was something other than the one just discussed above. The Court ordered each side to file within 24 hours the corresponding discovery request and resulting production, which are examined now.

Recall that this is a trademark case where plaintiff is an IP-oriented law firm, and defendant is in relevant part a multifaceted general legal referral service. Plaintiff's dream for damages was based on the contention that defendant's infringing logo diverted IP-oriented prospective clients from plaintiff to defendant. Defendant's website has a form where ordinary people with all kinds of legal problems (such as an auto accident) can enter their information to receive a referral — and as they enter answers the form apparently asks follow-up questions about specific legal practice areas and sends the client's resulting submission to law firms in the relevant areas, including IP-related law firms (Dkt. No. 213 ¶ 15).

2

So, *plaintiff* reported that the critical starting point for its damages calculation was the complete list of prospective clients who had completed the form and then been directed to rival IP-oriented law firms. This request was made on June 28, 2024:

> **NO. 61:** All data to show all secondary information captured through form fills of web form "connect with attorneys for a free consultation" or "get a case evaluation from a local lawyer" on LawFirms.com since November 30, 2023, including but not limited to the forms related to trademarks, patents, copyrights, trade secrets, intellectual property, litigation, and corporate services.

(*See* Dkt. No. 209 ¶ 3). And, *defendant* produced it by October 18, 2024 (Dkt. No. 213 ¶ 6). Yes, there was an initial two-week period when defendant withheld contact information, for no clear reason. But then defendant provided even that. And, defendant swore to Special Master McElhinny under penalty of perjury that it had been no-holds-barred in its production (Exhs. B–D). (Notably, plaintiff filed multiple such spreadsheets in its multiple supplementary responses; by providing multiple spreadsheets in multiple responses, plaintiff violated the order to file only the one spreadsheet that plaintiff had referred to in our hearing. None of the filings vindicates plaintiff's point.)

The problem with the complained-of production was not that defendant hid the answer, it turns out, but that plaintiff did not like the answer that was revealed: Said plaintiff, "It doesn't have any records related to trademarks" (*id.* ¶ 13 (quoting)). But, said defendant, "That is precisely the point. Zero of the leads on lawfirms.com sought intellectual property attorneys" (*id.* ¶ 14). "[H]ad a user wanted to ask for an intellectual property attorney [using the general form described above], that user could have — but no one did" (*id.* ¶ 15). That plaintiff was disappointed with the answer does not mean it was deficient. Plaintiff's post-hearing supplement suggested as much all over again, however. Said plaintiff about its own records, "I have found no evidence that Plaintiff received any contact information for trademarks, patents, copyrights, trade secrets, intellectual property, and corporate services leads in any of the Defendant's production" (Dkt. No. 210 ¶ 5). Reviewing these submitted records, that is no surprise. We all agree plaintiff seeks to dismiss its own case because it has found no evidence

of material damages. Plaintiff should have known this months before it stopped prosecuting its case.

Such a simple trademark action should not have generated over forty discovery orders (*see, e.g.*, Dkt. No. 97). The ordinary prevailing party rule applies for the ordinary reasons and then some. The following is **HEREBY ORDERED:**

    **i.** All claims are dismissed with prejudice, in favor of defendant.

    **ii.** All costs on both sides that have not been allocated already by orders of Special Master McElhinny are to be borne by plaintiff.

    **iii.** The Court retains jurisdiction to enforce payment of costs and to preside over any collateral issues that may be brought.

**2. THE MOTION TO STRIKE EXPERT REPORTS.**

Defendant moves to strike the more than 500 pages of merits materials attached to the request for voluntary dismissal (Dkt. No. 200). Because the case is dismissed, the motion to strike is **MOOT.**

**3. THE MOTION TO DISQUALIFY.**

Defendant moves to disqualify plaintiff's counsel, Attorney Raj Abhyanker (Dkt. No. 196). For reasons stated at our hearing, the motion was there denied.

**4. THE MOTIONS TO SEAL.**

The public enjoys presumptive access to all court records. A party seeking to overcome that presumption must show at least good cause and even, in the case of dispositive motions and other filings more than tangentially related to case merits, compelling reasons. Our local rules also impose requirements for motions to seal. A failure to follow the rules can result in total rejection. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–80 (9th Cir. 2006); *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101–02 (9th Cir. 2016). Four motions pend.

    **A. *MOTION TO SEAL STEMMING FROM MOTION TO DISMISS.***

Plaintiff seeks to seal a purported expert report attached to its motion to dismiss supporting why it would prevail on the merits (*see* Dkt. No. 194 (seeking to seal Dkt. No.

4

193)). This filing is therefore subject to the compelling reasons standard. And, it quotes the requirement that it "narrowly tailor[ ]" redactions. But the filing proposes no redactions at all — instead seeking to seal all 54 pages. And, it provides only the boilerplate reason that the purported document somewhere contains "sensitive financial information." Dozens and dozens of pages here contain nothing financial. Other pages contain only high-level financial numbers. It is not the public court's burden to parse and redact what plaintiff refused to parse and redact. If there were compelling or even good cause to seal particular numbers within these pages, plaintiff would have taken care to call them out with specificity, as our caselaw and local rules require. The motion is **DENIED.**

### B. MOTION TO SEAL STEMMING FROM MOTION TO DISQUALIFY.

Plaintiff seeks to seal exhibits attached to its opposition to the motion to disqualify (Dkt. No. 206 (seeking to seal Dkt. No. 205)). Even assuming the more lenient good-cause standard applies, it is not met. Plaintiff again has failed to abide by the basic rules that our local rules require. For example, plaintiff has not provided in table format a list of each document or portion sought to be sealed. It has not provided the interest that warrants sealing each, the injury that would result if not sealed, and the reason why no less restrictive alternative would suffice. Civil L.R. 79-5(c). The one global reason offered by the motion is that they contain financial records (Dkt. No. 206 at 2). But even fewer numbers are present here than in the above filings (if any are present here at all). Rather, the portions to be sealed appear simply to be a list of corporate entities and officers — the kind of information commonly published in corporate directories. If there were anything here worthy of sealing, plaintiff would have made a commensurate effort to protect it. The motion to seal is **DENIED.**

### C. MOTION TO SEAL STEMMING FROM POST-HEARING SUPPLEMENTARY BRIEFING.

Plaintiff seeks to seal exhibits attached to its post-hearing briefing (Dkt. No. 211 (seeking to seal lodged exhibits)). Plaintiff's motion is as deficient as the prior motions. These exhibits, however, obviously implicate third parties' confidences, including nascent legal

claims related to car accidents, health issues, workplace issues, and other sensitive information. Because there is self-evident good reason to seal this peripheral filing, the motion is **GRANTED**.

### D. MOTION TO SEAL STEMMING FROM DISCOVERY LETTER-BRIEF.

Plaintiff seeks to seal an exhibit attached to a discovery letter-brief that it later withdrew (Dkt. No. 195 (seeking to seal Dkt. No. 180)). The special master already commented on the letter-brief, finding in part that plaintiff's counsel should not have used opposing counsel's attorney-client email it had received in error (Dkt. No. 185). Plaintiff's motion seeks to correct the filing. It would replace the filing with one redacting the errant email. The special master's order provides good cause to do so. The motion is **GRANTED**.

## 5. THE SPECIAL MASTER.

Special Master Harold McElhinny has ably served the United States District Court for the Northern District of California in this discovery-intensive proceeding. With appreciation, he is **DISCHARGED** from duty in this matter.

## CONCLUSION

Plaintiff's entire case is **DISMISSED WITH PREJUDICE,** with costs allocated as above. The motion to strike the expert reports is **MOOT.** The motion to disqualify was earlier denied. Two motions to seal (Dkt. Nos. 195, 211) are **GRANTED.** The other two (Dkt. Nos. 194, 206) are **DENIED.** As to them, unless a reviewing court orders otherwise before then, plaintiff shall re-file the documents onto the public docket by **AUGUST 7, 2025.**

IT IS SO ORDERED.

Dated: May 15, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE